UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE– BRICKLAYERS
PENSION TRUST FUND-METROPOLITAN
AREA; BRICKLAYERS AND TROWEL TRADES
INTERNATIONAL RETIREMENT SAVINGS
PLAN; BRICKLAYERS HOLIDAY TRUST
FUND, METROPOLITAN AREA; TROWEL
TRADES HEALTH AND WELFARE FUND,
DETROIT AND VICINITY; BRICKLAYERS
AND TROWEL TRADES INTERNATIONAL
PENSION FUND; DETROIT METROPOLITAN
MASONRY JOINT APPRENTICESHIP AND
TRAINING COMMITTEE; THE BRICKLAYERS
INTERNATIONAL MASONRY INSTITUTE; and
LABOR-MANAGEMENT COOPERATION
COMMITTEE,

        Plaintiffs,        Case No. 12-11455
                                  Honorable Patrick J. Duggan

v.

RAYMOND LAPOINTE, TAMARA
LAPOINTE, and CAMO CONSTRUCTION,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR TO DISMISS**

Plaintiffs are trustees of various pension and welfare benefit funds established pursuant to section 101 of the Labor Management Relations Act, 29 U.S.C. § 186, and sections 302 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132, 1145. Plaintiffs bring this lawsuit to collect fringe benefit contributions allegedly owed to the funds by Defendant Camo Construction ("Camo")

and to conduct an updated audit of Camo.  Defendants Raymond and Tamara LaPointe, husband and wife, are the owners of Camo.  In their Complaint, Plaintiffs allege the following counts: (I) "ERISA: Delinquent Contributions" against Camo; (II) "Failure to Permit Updated Audit" against Camo; (III) violations of the Michigan Building Contract Fund Act by Raymond Lapointe ("Mr. LaPointe") and Tanya LaPointe ("Mrs. LaPointe") (collectively "LaPointes"); and, (IV) breach of fiduciary duties by the LaPointes.

Presently before the Court is Defendants' motion for summary judgment and/or to dismiss, filed pursuant to Federal Rules of Civil Procedure 56 and 12(c), respectively, on September 28, 2012.  The motion has been fully briefed and the Court held a motion hearing on December 13, 2012.  For the reasons that follow, the Court grants in part and denies in part Defendants' motion.

## I.     Summary Judgment Standard[1]

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

---

[1]Although Defendants also file their motion pursuant to Rule 12(c), they attach material beyond the pleadings in support of the motion and the Court finds it necessary to rely on those materials in deciding the motion.  Thus the Court is reviewing the motion pursuant to Rule 56's summary judgment standard, only.

After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II.     Factual and Procedural Background

The LaPointes operate Camo as an unincorporated husband-wife sole-proprietorship.[2] (Defs.' Mot. Ex. A ¶ 2; *see also* Compl. Ex. 1 at 42.) Camo is in the business of waterproofing and damp proofing, and the LaPointes engage in caulking.

---

[2]At the motion hearing, Plaintiffs' counsel suggested that this fact is in doubt. In response to Defendants' motion, however, Plaintiffs offered no evidence to the contrary and did not indicate that they needed discovery to present such evidence. *See* Fed. R. Civ. P. 56(d).

(Defs.' Mot. Ex. A ¶¶ 2, 3.)  The LaPointes operate the business out of their home and obtain individual contracts for jobs that they can handle without hiring any employees. (*Id.* ¶¶ 4, 5.)

On or about April 27, 2004, the LaPointes were approached by the B.A.C. Local Union No. 1 ("Union") and informed that they had to sign the Union's collective bargaining agreement ("CBA") in order to continue doing business.  (Defs.' Mot. Ex. A ¶ 8.)  Mrs. LaPointe signed the CBA on behalf of Camo on April 27, 2004.  (Pls.' Compl. Ex. 1 at 41.)

During their more than eight years of operating Camo, the LaPointes have never employed other individuals on a full-time or temporary basis.  (*Id.* ¶ 7.)  According to an audit performed by Plaintiffs' auditor for the period April 2004 through December 2010, Camo did subcontract work to Bill Johnson ("Mr. Johnson"), d/b/a B&B Sealants, for which payment was made in January-December 2010.  (Pls.' Resp. Ex. 2.)  Mr. Johnson, however, has never been an employee of Camo or the LaPointes.  (Defs.' Reply Supplemental Ex. 6 ¶ 2.)  According to Mr. Johnson's affidavit, he has done business with Camo only as a subcontractor.  (*Id.* ¶ 3.)  Mr. Johnson further attests that when he contracts with Camo or the LaPointes, he is in control of the work he completes, uses his own tools, and is paid through his sole proprietorship, B&B Sealants (hereafter "B&B"). (*Id.* ¶ 7.)  In fact B&B, as a sole proprietorship, is a signatory to a later version of the CBA with the Union.  (*See* Defs.' Reply Ex. 2 at 47.)

On or about February 29, 2012, Defendants received a letter from Plaintiffs'

4

auditor, requesting records for a payroll audit. (Defs.' Mot. Ex. A ¶ 11.) Defendants complied, submitting income records for the LaPointes, only, as Camo has had no other employees. (*Id.* ¶ 12.) The auditor subsequently informed Defendants that there was a deficiency for unpaid contributions and damages. (*Id.* ¶ 13.) According to a letter from the auditor dated September 19, 2012, Camo owed unpaid contributions of $15,216.86 and liquidated damages of $1,668.10, for a total amount owed of $16,884.96. (Pls.' Resp. Ex. 2.)

Defendants disputed (and still dispute) the amount of the audit, claiming that they had no employees and thus no obligation to make employee fringe benefit contributions. Seeking to collect the alleged unpaid contributions and an updated audit, Plaintiffs filed this action on March 30, 2012. As indicated above, Defendants now move to dismiss Plaintiffs' lawsuit.

### III.   Parties' Arguments

Defendants' primary argument is that Camo has never had employees and therefore was never required to make any fringe benefit contributions under the CBA. Defendants rely on the definitions of "employees" and "participants" in section 1002 of ERISA and Department of Labor regulations interpreting ERISA, specifically 29 C.F.R. § 2510.3-3. They further rely on provisions of the CBA, specifically article V, sections 2 and 10. Defendants contend that under the terms of the CBA and the pension plan, as owners of a sole proprietorship, the LaPointes are explicitly excluded as employees and from participation in the plans. Because Defendants argue they have never owed fringe

benefit contributions, they assert that Plaintiff's claims under ERISA and the Michigan Building Contract Fund Act fail.

Plaintiffs' response is premised in part on their assertion that Camo is a partnership. Relying on article V, section 10 of the CBA, Plaintiffs argue that where both partners work with the tools of the trade, they are treated as employees and contributions are due based on their work. Plaintiffs further argue that, pursuant to section 10, the obligation to contribute to the funds is not limited to owners or employees but to "everybody who works as a bricklayer." Additionally, Plaintiffs point out that Camo has remitted contributions for the LaPointes in the past. To the extent the term "employee" in the CBA is deemed ambiguous, Plaintiffs claim that these past contributions evidence Defendants' understanding of the CBA as requiring contributions for the LaPointes' work and support Plaintiffs' interpretation of the agreement. Plaintiffs also maintain that Camo was obligated to make contributions for the work performed by Bill Johnson. Plaintiffs therefore contend that Defendants (1) are required to submit to an updated audit, (2) owe the contributions already deemed to be due, and (3) violated the Michigan Building Contract Fund Act by failing to pay contributions for Bill Johnson.

**IV.   Applicable Law and Analysis**

Plaintiffs correctly point out that, "[i]ndependently, ERISA does not create an obligation to make fringe benefit contributions." (Pls.' Resp. Br. at 8.) Instead, pursuant to section 515, ERISA requires employers to make contributions to multiemployer ERISA plans pursuant to the documents governing the plan or a collective bargaining

agreement. 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."). Thus this Court must look to the terms of the CBA and, if needed, fringe benefit plans, to determine whether Camo owes the contributions claimed by Plaintiffs.

Article V of the CBA governs remittance of contributions to the fringe benefit funds. (*See* Pls.' Resp. Ex. 1.) It sets forth rates to be paid per fund "[f]or each hour, or portion thereof, for which an employee receives pay . . .." (*Id*. at 6-13.) Section 10 of article V states for whom contributions shall be made:

> *Except as affected by this Section*, contributions shall be made to every fringe benefit and other fund referred to in the schedule or rates and otherwise described in this Agreement *for everybody who works as a bricklayer performing masonry work*.

(*Id*. at 19 (emphasis added).) "Masonry work" is defined in article XI of the CBA and includes "all employees performing waterproofing/restoration masonry work" which is further defined to include "[c]aulking of [j]oints." (*Id*. at 31, 33.)

The CBA does not define the term "employee." The definition provided in ERISA is "circular" and "explains nothing," *Yates v. Hendon*, 541 U.S. 1, 13, 124 S. Ct. 1330, 1339 (2004), in that it states that "[t]he term 'employee' means any individual employed by an employer." 29 U.S.C. § 1002(6). Nevertheless, in *Yates*, the Supreme Court provided some guidance with respect to the term that is important to this case.

Specifically, the *Yates* Court held that "[u]nder ERISA, a working owner may have dual status" in that the owner can be both an "employee" and an "employer." 541 U.S. at 16, 124 S. Ct. at 1341 (holding that "a working owner can wear two hats, as an employer and employee").

Relying on 29 C.F.R. 2510-3.3, Defendants nevertheless argue that the LaPointes are not "employees" or "participants" in any of the plans and therefore do not owe any contributions. This regulation provides, in relevant part:

> (b) Plans without employees. For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under title I. However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under title I. Similarly, partnership buyout agreements described in section 736 of the Internal Revenue Code of 1954 will not be subject to title I.
>
> (c) Employees. For purposes of this section:
>
> (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse, and
>
> (2) A partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership.

29 C.F.R. § 2510-3.3. The Supreme Court made it clear in *Yates*, however, that the definitions in this regulation have limited scope: addressing only the threshold issue of

what plans qualify as "employee benefit plans" under Title I of ERISA.[3]  541 U.S. at 18-21, 124 S. Ct. at 1342-44.  Thus this Court concludes that the LaPointes can be "employees," even if they also are the owners of Camo.

Notwithstanding, section 10 of the CBA contains the following exceptions relevant to Plaintiffs' lawsuit against Camo.  First, with respect to the Detroit and Vicinity Trowel Trades Health and Welfare Fund, the CBA provides:

> Owners, as defined by the Trustees of the Detroit and Vicinity Trowel Trades Health and Welfare Fund in the exercise of their authority, may be contributed upon to and participate in that Fund *only on the basis and subject to the conditions* established by those Trustees.

(*Id*. at 19 (emphasis added).)  Pursuant to this provision, whether or not contributions are due based on the LaPointes' work is dependent upon the terms of the plan for the Detroit and Vicinity Trowel Trades Health and Welfare Fund ("Health and Welfare Fund").  The parties, however, have not provided the Court with the terms of this plan.[4]  Thus the Court

---

[3]Defendants highlight *Yates*' language that a working owner can qualify as a "participant" in an ERISA plan only "[i]f the plan covers one or more employees other than the business owner and his or her spouse . . .."  541 U.S. at 6, 124 S. Ct. at 1335.  In *Yates*, whether employees participated in the plan other than the owner of the corporation only was relevant because the Court was not presented with a multiemployer plan.  As set forth in 29 C.F.R. § 2510.3-3, a plan without employees does not qualify as an "employee benefit plan" under Title I of ERISA.  However, the present matter involves only multiemployer plans, which presumably have many non-owner participants.

[4]Defendants have provided the Court with copies of the Summary Plan Description ("SPD") for the Bricklayers and Allied Workers *International* Health Fund.  (Defs.' Reply Ex. H.)  As Plaintiffs point out, however, this fund is not a party to this lawsuit.  The Court has no basis to conclude that the terms of this plan are the same as those for the Health and Welfare Fund that *is* a party to this lawsuit.

finds a genuine issue of material fact with respect to whether contributions toward this fund are due and owing.

The second exception in the CBA regarding contributions that is relevant to this lawsuit relates to the Bricklayers Pension Trust Fund- Metropolitan Area (hereafter "Pension Fund").[5] Section 10 prohibits contributions to the Pension Fund "[i]f the Employer is a sole proprietorship in which the proprietor works with the tools of the trade . . .." (*Id.*) Similarly, the plan for the Pension Fund, effective July 1, 2009, limits participation to employees and defines "employees" to exclude "a sole proprietor . . . except as may be required or permitted by a collective bargaining agreement." (Pls.' Resp. Ex. 4 §§ 5, 9.) An amendment to the Pension Plan, effective October 27, 2011, modifies the definition of "employee" without changing this restriction: "If permitted by his collective bargaining agreement, a person that is otherwise within the definition of employee stated above and who is a sole proprietor or a partner in an employer partnership shall be an employee within the meaning of this Section 5." (*Id.* Ex. 5.) As set forth above, however, the CBA, expressly prohibits an employer who is a sole proprietorship from making contributions to the Pension Plan for a sole proprietor who works with the tools of the trade. (*Id.* Ex. 1 § 10.)

---

[5]The CBA requires contributions to only one "Local Pension" (*see* Pls.' Resp. Ex. 1 at 8-13), but refers to the "Bricklayers' Pension Trust Fund-Metropolitan Area" in section 3 and the "Bricklayers Pension Trust Fund- Detroit and Vicinity" in section 10. (*See id.* at 15, 19.) Plaintiffs attach plans bearing the first name to their response brief. (*See id.* Exs. 4, 5.) The Court assumes that the two names refer to the same local plan.

Plaintiffs present no evidence to support their assertion that Camo is a partnership rather than a sole proprietorship. Thus Plaintiffs fail to create a genuine issue of material fact with respect to whether Camo is a sole proprietorship.[6] As such, the Court concludes that no contributions to the Pension Plan are due and owing for the hours worked by the LaPointes. While Defendants attempt to convince the Court that no contributions are due and owing to *any* fund based on this exception, by its unambiguous terms, the exception applies only to the Pension Plan.[7]

As set forth above, "[e]xcept as affected by [section 10]," Camo was obligated under article V of the CBA to make contributions "to every fringe benefit and other fund referred to in the schedule of rates . . . for *everybody who works as a bricklayer performing masonry work*." The LaPointes concede that they perform masonry work as defined by the CBA. Thus the Court concludes that, *at least pursuant to the CBA*, Camo was obligated to make contributions to Plaintiffs' funds, *except* the Pension Fund and *perhaps* the Health and Welfare Fund, based on the hours of masonry work the LaPointes performed. As stated above, however, ERISA requires employers to make contributions based on the terms of the governing collective bargaining agreement, which here also

---

[6]The Court therefore finds it unnecessary to discuss and/or interpret the exception in article V, section 10 of the CBA applicable to partnerships.

[7]This does not preclude Defendants from showing at some later date that the plans governing other funds except contributions based on the LaPointes' work. Defendants, simply have not demonstrated their entitlement to summary judgment with respect to those other funds.

11

incorporates the terms of the plans governing the pension and welfare funds. (*See* Pls.' Resp. Ex. 1 art. V §§ 3-7.) As the parties have not presented the Court with the relevant plans, i.e., the plans governing the funds for which Plaintiffs are trustees, other than the Pension Fund Plan, the Court is not able to determine for purposes of summary judgment whether contributions were due to those other funds.

Plaintiffs' auditor also calculated unpaid contributions– and Plaintiffs argue that contributions are due– for work performed for Camo by Bill Johnson ("Mr. Johnson"), d/b/a B&B Sealants. Plaintiffs contend that Mr. Johnson is or was an employee of Camo. The undisputed evidence establishes, however, that Johnson is an independent sole proprietor (*see* Pls.' Reply Ex. 2 at 47), to whose sole proprietorship Camo subcontracted work.[8] (*Id*. Supplemental Ex. 6 ¶¶ 7, 8.)

Sections 3 through 6 of article V require contributions "[f]or each hour or portion thereof, for which *an employee* receives pay . . .." (Pls.' Resp. Ex. 1 Art. 5, §§ 3-6.) "In the law, there always has been a difference, and a big difference, between 'employees' and 'independent contractors.'" *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 167, 92 S. Ct. 383, 391 (1971). The CBA also reflects a distinction between employees and subcontractors. (*See id*. Art. VIII

---

[8]Pursuant to article IX, section 1 of the CBA, Camo may subcontract work that falls within the terms of the agreement, provided the subcontractor also is bound by the CBA. (Pls.' Resp. Ex. 1) ("The Employer agrees not to subcontract any work . . . which, if done by the Employer itself, would come under the terms of this Agreement . . ., to any employer not having that agreement with the Union."). B&B Sealant is a signatory to a later version of the CBA. (*See* Defs.' Reply Ex. 2.)

("Hiring of Employees") and IX ("Contracting - Leasing").) Thus the Court finds that the CBA did not require Camo to make contributions to the funds based on the hours worked by Mr. Johnson. As such, the Court also concludes that Defendants are entitled to summary judgment with respect to Plaintiffs' claim under the Michigan Building Contract Fund Act.

## V. Conclusion

In summary, the Court concludes that Defendants are entitled to summary judgment with respect to their obligation to make contributions toward the Bricklayers Pension Trust Fund - Metropolitan Area and for the hours worked by Mr. Johnson, d/b/a B&B Sealant. The Court also concludes that Defendants are entitled to summary judgment with respect to Plaintiffs' claim that they breached the Michigan Building Contract Fund Act by failing to make contributions for Mr. Johnson's work. Defendants, however, fail to demonstrate the absence of a genuine issue of material fact or that they are entitled to judgment as a matter of law with respect to Plaintiffs' claims related to contributions to the remaining funds. This does not preclude Defendants from showing at some later date, once they receive copies of the relevant plans, that other funds do not require contributions based on the LaPointes' work.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED**, that Count III of Plaintiffs' Complaint is

**DISMISSED WITH PREJUDICE**.

Dated: December 19, 2012         s/PATRICK J. DUGGAN
                                 UNITED STATES DISTRICT JUDGE

Copies to:
Michael A. Novara, Esq.
Paul O. Catenacci, Esq.
Thomas L. Boyer, Esq.
Faith M. Gaudaen, Esq.